UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:23 CR 480 RLW/JSD |
| | ) |
| ANTOINE TERRELL SHANKLIN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

All pretrial matters have been referred to this Court pursuant to 28 U.S.C. § 636(b). The matter currently before the Court is the United States of America's ("government") Motion to Appoint Unconflicted CJA Counsel and for Court to Inquire into Potential Conflict of Interests as to Attorney Dramon Foster ("motion"). [ECF No. 17] Specifically, the government requested the Court to conduct a pretrial hearing wherein the Court would inquire into the potential conflict of interest relating to Foster's current legal representation of Shanklin here as well as his former and concurrent representation of Carl E. Horton in other federal and state criminal prosecutions.[1] On December 4, 2023, the Court held the requested hearing, and this motion is ready for disposition.

**Background**

Here, in Count One, the government has charged that, on August 14, 2023, Shanklin possessed fentanyl with the intent to distribute it. In Count Two, the government charged that, on that same date, Shanklin possessed a firearm in furtherance of a drug trafficking crime.

At the December 4 hearing, this Court conducted an inquiry regarding Foster's

---

[1] Foster currently represents Horton in multiple pending state prosecutions, and formerly represented him in *U.S. v. Horton, et al.*, 4:23-CR-398-RWS/JSD, where this Court found a conflict of interest and removed him as counsel.

1

representation of Shanklin. *See United States v. Lashley*, 251 F.3d 706, 711 (8th Cir. 2001). At the outset, the government, without taking a specific position on the issue, referenced its written motion and alleged a potential conflict of interest between Foster's current representation of Shanklin and his former and current representation of Horton. Specifically, the government cited, as its evidence herein, Shanklin's use of Horton's telephone number for the purpose of selling fentanyl on multiple occasions. Moreover, the government referred to the potential lengthy sentence Shanklin was facing and that a very real option for him was the process of 18 U.S.C. § 3553(e), which could involve Shanklin providing "substantial assistance" in the prosecution of Horton, thereby creating a conflict of interest due to Foster's representation of both Horton and Shanklin. The government, however, emphasized that, since filing the instant motion, this Court had removed attorney Foster from representing Horton in his federal case, which obviously changes the dynamic as to a potential conflict.

The Court eventually excused the government's counsel before hearing from Foster and Shanklin. The Court first inquired of Foster, who confirmed his past and current representation of both Shanklin and Horton. Foster essentially advised the Court that he had wholly discussed the matter with Shanklin, that Shanklin understood the government's motion relating to Foster's potential conflict, and that Shanklin was waiving any actual conflict or potential conflict arising from Foster's representation of the two defendants. Furthermore, Foster asserted that he had specifically discussed with Shanklin the possibility of any case resolution involving § 3553(e), and that Shanklin rejected that possibility, even if it meant receiving a lesser sentence. In fact, Foster assured the Court that he had advised Shanklin of all of his options and that Shanklin intended on pleading guilty.

The Court then questioned Shanklin and discussed the matter with him. To be sure, this Court communicated to Shanklin the nature of the potential conflict and the Court's intent to

2

preserve his right to the assistance of counsel without conflict. The Court's inquiry confirmed that Shanklin was, at present, knowingly, voluntarily, and intelligently waiving any conflict or potential conflict, despite Foster's former and concurrent representation of both defendants. Moreover, Shanklin substantiated Foster's characterization of his plans regarding his options, and he reaffirmed his intention to plead guilty without regard to § 3553(e).

## Discussion

Under the Sixth Amendment of the United States Constitution, a criminal defendant has the right to the assistance of counsel. U.S. Const., 6th Amend.; *see also Wheat v. U.S.*, 486 U.S. 153, 158 (1988). More to it, the right to counsel also includes the right to effective representation which is free of conflicts of interest. *See Wood v. Georgia*, 450 U.S. 261, 271 (1981); *see also United States v. Agosto*, 675 F.2d 965, 969 (8th Cir. 1982). "When informed that a risk of a conflict of interest exists, the district court must hold a pretrial hearing to inquire into the situation." *Lashley*, 251 F.3d at 711. However, a defendant may waive any conflict of interest if the waiver is knowing, voluntary, and intelligent. *Id*.

Nevertheless, "[a] criminal defendant does not have the absolute right to counsel of his own choosing." *U.S. v. Espino*, 317 F.3d 788, 798 (8th Cir. 2003); *see also Wheat*, 486 U.S. at 159 ("aim of the [Sixth] Amendment is to guarantee an effective advocate…rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.") "Although the courts must recognize the Sixth Amendment presumption in favor of counsel of choice, that presumption may be overcome not only by a demonstration of actual conflict but also by a showing of a *serious potential for conflict*." *Wheat*, 486 U.S. at 154 (emphasis added). The determination of whether a particular set of circumstances amounts to an actual conflict or potential conflict which overcomes a client's waiver is left to the sound discretion and informed judgment of the trial court. *Id*. at 164.

In *Wheat*, the United States Supreme Court upheld the district court's denial of waivers of conflicts of interest and potential conflicts of interest in a case involving an attorney representing multiple criminal defendants. *Id*. at 163. The Supreme Court pointedly recognized the plain differences between the finding of an actual conflict of interest, where a court may easily and rightly order that the defendants be represented by separate counsel, and the finding of the more common but undetermined *potential* conflict of interest, where a court must examine the relationships between all parties during the pretrial period when later conflicts of interest are problematic. *Id*. at 162-63. Moreover, the Court characterized the precarious nature of multiple co-defendants' relationships with each other thusly: "[a] few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants." *Id*. at 163. As to the Court's role in addressing that variability, the Court stated:

> the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Id*. at 163. By way of example, the *Wheat* Court speculated a dilemma involving one of the conflicted or potentially conflicted attorney's clients testifying against another at trial, with the attorney then being ethically unable to conduct necessary, vigorous cross-examination of the testifying client. *Id*. at 164.

In *Lashley*, on the other hand, the Eighth Circuit upheld the district court's failure to disqualify defense counsel for a conflict of interest relating to the use of exculpatory witness statements. *Lashley*, 251 F.3d at 711, The district court had conducted a hearing and inquired into the potential conflicts of interest resulting from defense counsel's possible testimony regarding the statements. *Id*. Although "[t]he district court concluded that the use of the statements

4

presented a serious conflict of interest problem and indicated a willingness to disqualify Lashley's counsel if the statements would be used at trial," the court allowed defense counsel's continued representation of Lashley following Lashley's waiver of the conflict. *Id.* The appellate court found that "the district court took adequate and proper steps to communicate to Lashley the nature of the potential conflict and to preserve Lashley's right to the assistance of conflict free counsel." *Id.* Citing the record, the Eighth Circuit determined that the defendant had "knowingly, voluntarily, and intelligently waived the potential conflict and eliminated the problem by agreeing to proceed to trial without the benefit of the suspect statements that could potentially cause a conflict-of-interest problem." *Id.* Critically, the Eighth Circuit stated that "no actual conflict of interest ever arose during trial." *Id.*

Likewise, here, Shanklin knowingly, voluntarily, and intelligently waived any potential conflict of interest after this Court took adequate and proper steps to communicate to him the nature of the potential conflict and to preserve his right to the assistance of conflict free counsel. Indeed, Shanklin confirmed that he had fully discussed the potential conflict with Foster and, not only was he waiving any potential conflict, but he also assured the Court that he intended to plead guilty following receipt of discovery and waiver of the filing of pretrial motions. When pressed further, Shanklin acknowledged that he would waive any potential conflict even if it meant foregoing a lesser sentence. Moreover, while this Court could envision a potential conflict of interest, any speculation would likely include Shanklin participating through the § 3553(e) process. However, both Shanklin and Foster unequivocally asserted that the resolution of Shanklin's case here would not involve that statute.

Furthermore, the only apparent matter of conflict relates to Shanklin's purported use of Horton's telephone number for the purpose of selling fentanyl on multiple occasions. This Court could certainly envision a situation involving Horton's testimony regarding, among other things,

5

Shanklin's use of the telephone, which would cause Foster to be ethically unable to conduct vigorous cross-examination of his client. However, both Shanklin and Foster have eliminated the possibility of that issue by unequivocally promising the Court that Shanklin would be pleading guilty. Therefore, although potential conflicts of interest are unpredictable, based on Shanklin's and Foster's present assurances here, this Court finds that no serious potential conflict of interest exists at this time which would necessitate substitution of Foster as counsel.

Therefore,

**IT IS HEREBY ORDERED** that Attorney Dramon Foster not be substituted as counsel for Defendant Antoine Terrell Shanklin at this time, and that the government's Motion to Appoint Unconflicted CJA Counsel and for Court to Inquire into Potential Conflict of Interests as to Attorney Dramon Foster [ECF No. 17] is granted to the extent the Court conducted a hearing and inquired into Foster's potential conflicts of interest, but is denied in all other respects.

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of December, 2023.